James C. HALE, Sr.

v.

Randy TYREE, Individually and in his official capacity as Mayor of the City of Knoxville, Tennessee; William Fox, Police Chief of the City of Knoxville, Tennessee; D. L. Bowman, Police Officer of the City of Knoxville, Tennessee; and Lt. Charles Craiger, Police Officer of the City of Knoxville, Tennessee.

Civ. No. 3–79–387.

United States District Court,
E. D. Tennessee, N. D.

Nov. 15, 1979.

Benton H. Jones, Knoxville, Tenn., for plaintiff.

Sharon E. Boyce, Knoxville, Tenn., for defendant.

### OPINION AS RENDERED FROM THE BENCH

ROBERT L. TAYLOR, District Judge.

This suit was filed by Mr. James C. Hale against the Mayor of Knoxville, The Chief of Police and two individual officers. Both the City and Mr. Hale have moved for summary judgment. The principal issue in the case is whether the City Ordinance providing for the confiscation and impoundment of illegally parked automobiles by officers of Knoxville comports with the Due Process requirements of the Fourteenth Amendment.

The Ordinance[1] is contained in Chapter 26, Article XVII of the Code of Knoxville.

---

1. Section 26–1701. *Impoundment of vehicles.*

Any Law Enforcement Officer of the City shall have authority to impound any vehicle, by towing or otherwise, such vehicle to the vehicle pound, under the circumstances hereinafter enumerated:

(1) When a vehicle is parked, stopped or standing upon an alley, street or highway within the municipal limits in violation of this Chapter;

(2) When a vehicle is parked, stopped or standing upon any alley, street or highway so as to obstruct the flow of traffic thereon;

(3) When a vehicle upon any alley, street or highway within the municipal limits is so disabled as to constitute an obstruction to traffic, and the person in charge of the vehicle does not provide for its custody and removal;

(4) When there has been affixed to any vehicle, in the manner provided in Section 26–1705, a pound tag, and the owner of said vehicle shall fail to pay to the officer in charge of the pound, within five (5) days thereafter, the fee he is directed to pay by such notice, then any member of the Police Department may have such vehicle removed to the pound from any point on the streets of the City where such vehicles may happen to be found, whether the same be illegally parked, or not at time of removal;

(5) When the driver or operator of any vehicle is arrested because of violations of traffic laws and regulations, penal ordinances of the municipality and the law of the state and United States, and the Police Department acquires custody of the vehicle for protection and safekeeping;

(6) Abandoned, inoperable, or dismantled motor vehicles;

(7) Stolen vehicles.

(8) When two or more parking tickets which have become delinquent are outstanding as to any vehicle and said vehicle is parked on any municipally owned or leased property, whether the vehicle be parked legally or illegally at the time of removal.

The Chief of Police shall establish, by rules and regulations, the procedures for the operation of the vehicle impoundment lot and fix the methods of collecting storage charges.

\* \* \* \* \* \*

The facts are not disputed. Hale owns a television repair shop on Magnolia Avenue adjacent to the fair grounds. During the week of September 9, 1979, the City posted temporary "No Parking" signs in that area, and specifically in front of Mr. Hale's shop. On September 10, after having asked Hale and his son to move Hale's 1976 Ford van from the "No Parking" zone, the defendant police officers towed it to the Pound. It was retrieved later that day after Hale paid a towing fee of $40.00.

On September 11, Hale phoned John H. Murrian, an Executive Assistant to Mayor Tyree, complaining that his van had been wrongfully towed in violation of certain alleged assurances from the City that Hale would be allowed to use the area for loading and unloading purposes. Murrian interceded and was successful in getting the $40.00 returned to Hale. He also suggested to the Traffic Engineering Department that the "No Parking" signs be replaced with 15-minute parking signs, which they were.

On September 12, Hale's 1976 brown van was impounded for violation of the 15-minute parking zone. The van was released to Hale on September 20 upon payment of $92.00 towing and storage fee. Plaintiff's only effort to recover this amount has been the filing of the present lawsuit.

On the foregoing facts Hale seeks a declaratory judgment and injunctive relief, claiming that the Ordinance is unconstitutional in that it:

(1) Does not provide for prior notice or opportunity for hearing before seizure of a vehicle.

(2) Requires payment of towing and storage fees without opportunity for a hearing before an owner can recover his impounded vehicle.

(3) Does not in any event provide for any type of hearing before an impartial decision

Section 26–1703. *Charges for towing and storage of vehicles.*

\* \* \* \* \* \*

(b) The owner of the impounded vehicle or his authorized agent may make application to take possession of the same and remove such vehicle from the vehicle pound upon presentation of a valid bill of sale or certificate of title and payment of the cost of towing the vehicle and all charges which may have accrued for the storage of the vehicle.

(c) In such case the officer in charge shall state to the owner or his authorized agent the nature of the violations.

(d) In each case the officer in charge shall give a proper receipt for the fee paid and where the owner or his authorized agent denies the violation, under oath, the receipt shall be marked "paid under protest".

(e) Where fees are "paid under protest", said complaint shall be forwarded to the Chief of Police, or his designated representative for review, with any refunds to be recommended by the same.

(f) No owner of a vehicle shall evade the payment of any pound fee herein provided for by representing that he was not operating the vehicle for himself at the time of the violation charged.

Section 1704. *Sale of unclaimed vehicles.*

(a) If, at the end of thirty (30) days, any impounded vehicle has not been claimed by its rightful owner or his authorized agent, and the towing and accumulation storage fees have not been paid, then the Police Department shall furnish the name, type, model, serial number, and motor number of such vehicle to the purchasing agent who shall proceed to sell same for cash at public sale to the highest bidder.

(b) Notice of the sale shall be provided twenty-one (21) days prior to the date of sale by certified letter to the registered owner of the vehicle and any lienholders and by announcement in a local newspaper.

(c) Such sale shall be conducted under the authority of the City Purchasing Agent or some person designated by him. The purchasing agent shall cause a descriptive list to be kept of all vehicles sold and the price for which each vehicle was sold.

(d) The money received from the sale of unclaimed vehicles so provided herein shall be paid by the Purchasing Agent into the City treasury.

Section 26–1705. *Pound tags.*

(a) When it is deemed impractical or inadvisable by an officer when he witnesses a violation of this Chapter to tow the offending vehicle to the pound, he may instead post or affix a notice to such vehicle notifying the driver of the facts of the violation and directing him to pay to the officer in charge of the pound the fee which would have been charged if the vehicle had been impounded.

(b) The owner or his agent, on presenting himself at the pound in response to notice, shall be subject to the same penalties and entitled to the same rights as though his vehicle had been impounded.

maker on the merits of the violation giving rise to the tow.

The Ordinance provides for the removal of any vehicle which is parked in violation of the City Code, or which is obstructing traffic, or which is being driven by a driver who is being arrested or which is "abandoned, inoperative or dismantled" or stolen, or which is the subject of two or more delinquent parking tickets. In addition, if a police officer deems it impracticable or inadvisable to tow a vehicle when he witnesses the infraction, he may place the "pound tag" on it directing the owner to pay the fee which would have been charged had the vehicle in fact been impounded. If such fee is not paid within five days, the vehicle may be towed without notice. Sections 26–1701, 26–1705. The Ordinance further provides for a schedule of towing and storage fees which must be paid by the owner or his representative before he may recover his vehicle. Section 26–1703.

The only recourse available to the owner is provided for in Section 26–1703(d) and (e), which states:

> (d) In each case the officer in charge shall give proper receipt for the fee paid and where the owner or his authorized agent denies the violation, under oath, the receipt shall be marked "paid under protest."

> (e) Where fees are "paid under protest," said complaint shall be forwarded to the Chief of Police or his designated representative for review, with any refunds to be recommended by the same.

■ The City claims that plaintiff is barred from recovery for failure to exhaust his state administrative remedies. *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638. We do not agree. The informal appeal to the Mayor's Executive Assistant is neither desirable nor prescribed by the statute. And in view of the holding of this Court today, requiring plaintiff to pursue his avenue of review by the Chief of Police would be forcing him to do a futile act.

■ One of the main issues is whether the provision for towing a vehicle to the impound lot without prior notice or opportunity for hearing violates the requirements of the Due Process Clause of the Fourteenth Amendment. Constitutional Due Process requires an opportunity for a hearing before the state or city may deprive a person of his property, absent exceptional circumstances. *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62; *Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113; *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556. The Supreme Court has held a temporary, nonfinal deprivation of property is nevertheless a deprivation. *Fuentes, supra*, 84–85, 86, 92 S.Ct. 1996, 1997. Other courts have recognized a protected interest in a person's continued use of his automobile, especially for business. *Stypmann v. San Francisco*, 557 F.2d 1338 (9th Cir. 1977). Since the ordinance in question requires what amounts to the temporary deprivation of either a person's automobile or his money, a property interest is involved.

The issue thus narrows down to whether the ordinance provides for an opportunity to be heard at "a meaningful time" and "in a meaningful manner." *Armstrong, supra*, 380 U.S. at 552, 85 S.Ct. at 1191; *Boddie, supra*, 401 U.S. at 378, 379, 91 S.Ct. at 786, 787. It is not necessary that an opportunity to be heard be granted prior to the deprivation in every situation. In *Fuentes v. Shevin*, the Supreme Court announced a three-part test for when the hearing may be had subsequent to the deprivation.

> First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance. 407 U.S. at 91, 92 S.Ct. at 2000.

We think that the towing provision of the Ordinance does violate the Due Process Clause, except insofar as it allows for summary towing of vehicles impeding the flow of traffic or otherwise jeopardizing the public welfare. But even in situations which fall within this narrow exception, notice and an opportunity for hearing before a neutral official must be provided as soon as practicable.

Another issue is whether the provision requiring payment of towing and storage fees before an impounded vehicle may be recovered by its owner and without prior opportunity for hearing on the merits of the violation violates the Due Process Clause. We are of the opinion that it does. The situation simply does not fall within the narrow exception to the predeprivation hearing requirement outlined in *Fuentes*. There is no important governmental interest in immediate payment of the fees. Nor is there "a special need for very prompt action." *See Remm v. Landrieu*, 418 F.Supp. 542 (E.D.La.1976). The City can secure the owner's bond pending a hearing on the merits. Accordingly, in this case, the City must return Mr. Hale's $92.00 pending a hearing consistent with this opinion.

Finally, does the provision for review of the propriety of the tow by the Chief of Police comply with the Clause. The Chief of Police is not the "neutral official" contemplated by the Due Process Clause of the Fourteenth Amendment. *Fuentes, supra*, 407 U.S. at 83, 92 S.Ct. at 1995.

The Court concludes that the Ordinance is unconstitutional insofar as it does not provide for a hearing by a neutral official before payment of towing and storage fees, and insofar as it provides for summary seizure of abandoned vehicles which are not blocking traffic. It is a proper Ordinance, however, insofar as it provides for removal of vehicles which impede the flow of traffic.

For the foregoing reasons, the defendants must be enjoined from further enforcement of the Ordinance, except as is consistent with this opinion.

Order Accordingly.