Gerard O. BREATH, Individually d/b/a The Roach Coach, and on behalf of all others similarly situated, Plaintiff-Appellee Cross-Appellant,

v.

Alwynn J. CRONVICH, (former) Sheriff of Jefferson Parish, and Harry Lee, Sheriff of Jefferson Parish, Defendants-Appellants Cross-Appellees.

Lloyd BROWN, Individually and on behalf of all others similarly situated, Plaintiff-Appellee,

v.

Alwynn J. CRONVICH, (former) Sheriff of Jefferson Parish, and Harry Lee, Sheriff of Jefferson Parish, Defendants-Appellants.

Gerard O. BREATH, Individually d/b/a The Roach Coach, and on behalf of all others similarly situated, Plaintiff-Appellee Cross-Appellant,

v.

Alwynn J. CRONVICH, (former) Sheriff of Jefferson Parish, et al., Defendants-Appellants Cross-Appellees,

and

Edwin W. Edwards, Governor of Louisiana, Defendant-Appellant Cross-Appellee.

Lloyd BROWN, individually and on behalf of all others similarly situated, Plaintiff-Appellee,

v.

Alwynn J. CRONVICH, (former) Sheriff of Jefferson Parish, et al., Defendants-Appellants,

and

Edwin W. Edwards, Governor of Louisiana, Defendant-Appellant.

Nos. 83–3035, 83–3438.

United States Court of Appeals, Fifth Circuit.

April 16, 1984.

Rehearing and Rehearing En Banc Denied June 14, 1984.

Cronvich, Wambsgans & Michalczyk, Richard M. Michalczyk, Metairie, La., for Cronvich, et al.

Patricia Nalley Bowers, Asst. Atty. Gen., New Orleans, La., for Edwards.

Robert M. Hearin, Jr., New Orleans, La., for Breath.

Richard Goins, New Orleans, La., for Brown.

Before BROWN, GEE and WILLIAMS, Circuit Judges:

GEE, Circuit Judge:

This suit revolves around the practice in Jefferson Parish of towing and impounding illegally-parked vehicles and assessing towing and storage fees before the vehicles are released to their owners. Plaintiff Breath filed suit seeking individual and classwide injunctive and declaratory relief, individual restitution and damages, and costs and attorneys' fees for a class of persons who had paid non-refundable towing and impoundment fees. Several weeks later, plaintiff Brown filed suit seeking similar relief. These suits were consolidated.

The district court found that the challenged vehicle and towing practices, as well as those provisions of La.Rev.Stat.Ann. 32:392 (West Supp.1984) which relate to the seizure and retention of unoccupied vehicles found in violation of La.Rev.Stat.Ann. 32:143(A) (West 1963), were unconstitutional in failing to provide procedural due process. In several later orders, the district court awarded damages, costs and attorneys' fees to plaintiffs and distributed the award among the three defendants: (1) ex-Sheriff Cronvich of the Jefferson Parish Sheriff's Office (JPSO), sued in his individual capacity; (2) Sheriff Lee, sued in his official capacity; and (3) the Governor of Louisiana also sued in his official capacity. Defendants appeal, contending that the statutes and JPSO practices are constitutional, that Sheriff Cronvich is entitled to qualified immunity, and that the award of attorneys' fees was too large. Plaintiffs cross-appeal, maintaining that the fee award is too small. We find the statutes and JPSO practices constitutional and, accordingly, reverse.

## I.

On August 20, 1976, a JPSO officer responded to a complaint by a Jefferson Parish resident that a truck parked near an intersection allegedly blocked the view of those who wished to cross the intersection. This truck was owned by Breath. The officer cited Breath under § 143(A) for "parking in an intersection causing an obstruction of view," and had the truck towed

and impounded. Later the same day, Breath called the JPSO to report his truck stolen and was informed of the ticketing, towing and location of his truck. He obtained its release the same day, upon verification of ownership and payment of a $20 towing charge. In proceedings held before the First Parish Court for the Parish of Jefferson, Breath's motion to quash the ticket was granted because of a discrepancy between the particular violation charged on the ticket and information contained in the Bill of Particulars. The court refused, however, to grant his request for a return of the $20 towing fee, indicating that no mechanism was in existence to secure its return.

On July 17, 1976, Brown reported to the New Orleans Police Department that his car, which he had purchased a few days earlier, had been stolen. The vehicle was discovered that day blocking a residential driveway in Jefferson Parish. Because the vehicle registration records still showed the owner of the vehicle to be Joseph Banks, Brown's predecessor in title, Brown was not informed that his vehicle had been found until September 13. When he appeared at the towing yard to pick up his vehicle, he was told that his car had been discovered illegally parked and that he could recover it only by paying the accrued towing and storage charges of $120. Brown met with JPSO Chief Deputy

Thompson who, upon hearing the facts of the case, arranged for Brown's car to be released without payment of the charges.

## II.

Brown and Breath argue that the statutory scheme under which their cars were towed, as well as the JPSO practices enforcing that scheme, violated their right to procedural due process. La.Rev.Stat.Ann. 32:392 provides that a police officer may tow or detain any vehicle found in violation of La.Rev.Stat.Ann. 32:143(A).[1]

When a JPSO deputy discovers an illegally parked car subject to towing under § 392, he first attempts to locate the driver within the immediate vicinity. If unsuccessful, the deputy issues a citation and radios JPSO headquarters, requesting that a tow truck be dispatched to remove and impound the ticketed vehicle. The tow truck then tows the vehicle to the JPSO pound or to a private pound, depending upon availability.

Once the car is impounded, the JPSO radio room dispatcher attempts to telephone the owner to inform him of the towing and of the location of his car. If the car is impounded in the JPSO yard, a post card or registered letter is sent to the registered owner of the car informing him of the tow. If the car is at a private yard, no such notice is sent. Naturally, if an

---

1. La.Rev.Stat.Ann. 32:143(A) provides:

No person shall stand, or park a vehicle, except when necessary to avoid conflict with other traffic, or in compliance with law or the directions of a police officer or traffic control device, in any of the following places:

(1) On a sidewalk;
(2) In front of a public or private driveway;
(3) Within an intersection;
(4) Within fifteen feet of a hydrant;
(5) On a cross walk;
(6) Within twenty feet of a cross walk at an intersection;
(7) Within twenty feet upon the approach to any flashing beacon stop sign, or traffic control signal located at the side of a roadway;
(8) Between a safety zone and the adjacent curb, or within twenty feet of points on the curb immediately opposite the ends of a safety zone;

(9) Within fifty feet of the nearest rail of a railroad crossing;
(10) Within twenty feet of the driveway entrance to any fire station, and on the side of a street opposite the entrance to any fire station within seventy-five feet of said entrance, when properly posted;
(11) Alongside or opposite any street excavation or obstruction when stopping, standing, or parking would obstruct traffic;
(12) On the roadway side of any vehicle stopped or parked at the edge or curb of a street;
(13) Upon any bridge or other elevated structure upon a highway or within a highway tunnel;
(14) At any place where official signs prohibit such;
(15) Any place where parking will obscure or obstruct visibility of any traffic control device.

owner reports to the police that his car is missing, he is informed of the tow.

A motor vehicle towed and impounded for illegal parking will be released to the owner upon payment of the costs incurred in towing and storing the vehicle. If the owner intends to contest the parking violation, he can obtain release of his car *without* paying the towing and storage fees by obtaining an appearance bond from a magistrate under La.Rev.Stat.Ann. 32:392(B) (West Supp.1984). An owner can also redeem his vehicle without paying the fees by informally complaining to JPSO that the deputy erred in ticketing, or by appealing to the owner of one of the private towing companies that to pay the fee would be a hardship. If an owner pays the towing and storage fees, he cannot obtain a refund even if he prevails on the traffic violation charge.

### III.

 Plaintiffs maintain that this towing and impoundment scheme deprives them of property without due process. The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). In determining the type of hearing required, we must consider three distinct factors: (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards, and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. *Id.* at 335, 96 S.Ct. at 903.

 The hearing need not always take place before the deprivation of the interest. There are "extraordinary situations" that justify postponing notice and an opportunity for a hearing. *Fuentes v. Shevin*, 407 U.S. 67, 90, 92 S.Ct. 1983, 1999, 32 L.Ed.2d 556 (1972). Thus, courts have countenanced deprivation of property interests without opportunity for a prior hearing when: (1) the deprivation is directly necessary to secure an important government or general public interest, (2) there is a special need for very prompt action, and (3) the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance. *Id.* at 91, 92 S.Ct. at 2000.

A. Plaintiffs argue that § 392 violates their right to due process by failing to provide a hearing *prior* to the time cars are towed. While conceding that in some emergency situations police could tow cars without a prior hearing, plaintiffs maintain that not every violation of § 143(A) presents an emergency situation justifying the seizure of a violating, unoccupied vehicle without prior notice and a hearing. Plaintiffs, however, specifically waived the right to make this argument in their briefs.[2]

 Were we to reach this issue, however, it is clear that prior notice and hearing is not required to tow illegally parked cars. *Sutton v. City of Milwaukee*, 672 F.2d 644, 646 (7th Cir.1982); *Remm v. Landrieu*, 418 F.Supp. 542, 545 (E.D.La.1976). The three *Fuentes* requirements for postponed notice and hearing are satisfied. First, the towing is necessary to protect the interest of local governments in regulating the use of their streets and other public places. Second, public convenience and safety normally require the prompt removal of illegally parked vehicles. Third, a police officer must make some determination that the statute is being violated before the vehicle can be towed. *Remm*, 418 F.Supp. at 545. Thus, the lack of prior

---

**2.** Breath states in his brief that he does not argue this point on appeal. Brief of Plaintiff Breath at 20 n. 6. Brown incorporates Breath's brief into his own. Brief of Plaintiff Brown at 7.

notice and hearing does not demonstrate a lack of procedural due process.

■ B. Plaintiffs additionally argue that they were not afforded an adequate post-towing hearing and that this violates their right to due process. When a car is towed or impounded, some form of fair and impartial hearing at which an owner is provided an opportunity to challenge the lawfulness of removing his car and assessing charges against him must be provided within a reasonable time period. *Huemmer v. Mayor & City Council of Ocean City*, 632 F.2d 371, 372 (4th Cir.1980); *Stypmann v. City and County of San Francisco*, 557 F.2d 1338, 1343–44 (9th Cir. 1977); *Craig v. Carson*, 449 F.Supp. 385, 395 (M.D.Fla.1978).

If the car owner chooses to contest the parking ticket, he will be granted a hearing on the merits of the violation. While waiting for the hearing to be scheduled, the owner can redeem his car without paying any fees by obtaining an appearance bond:

> The court or committing magistrate having jurisdiction over an offense involving a vehicle shall not order or allow the release of the vehicle prior to the full satisfaction of all penalties or charges assessed on account of the offense except upon the execution of an appearance bond in the maximum amount of such penalties and charges, with good and solvent surety approved by the court or committing magistrate.

La.Rev.Stat.Ann. 32:392(B) (West Supp. 1984). The term "appearance bond" is defined as:

> every bail bond, recognizance or other obligation, or deposit of cash, checks, negotiable bonds or money orders made or taken to secure the appearance of any person before any court; but in all cases where cash, checks, negotiable securities or money orders have been deposited in lieu of bond with a surety, in case of discharge or forfeiture, the same shall be disposed of as otherwise provided by law.

La.Rev.Stat.Ann. 15:88 (West 1981). Thus, by obtaining an appearance bond, a person can have possession of his car until a hearing on the merits of the traffic ticket is held.

■ This bond procedure, combined with the hearing on the merits of the ticket, affords adequate due process protection. The procedure protects the government's interest in retaining security for the owner's payment of towing and storage fees, and also protects the vehicle owner's interest in the uninterrupted use of his automobile. Indeed, several cases suggest that similar bond procedures would provide due process protection to car owners whose vehicles have been impounded. *See Stypmann*, 557 F.2d at 1343; *Hale v. Tyree*, 491 F.Supp. 622, 626 (E.D.Tenn.1979); *Craig*, 449 F.Supp. at 395; *Remm*, 418 F.Supp. at 545–46. Consequently, we hold that the appearance bond procedure in § 392(B), along with the hearing on the merits of the parking ticket, provides a post-seizure hearing sufficient to comport with the standards of due process.[3]

C. Plaintiffs also contend that even if the appearance bond procedure, combined with the hearing on the merits, is an adequate hearing for due process purposes, defendants must inform vehicle owners that such a procedure is available.

■ An elementary and fundamental requirement of due process is notice reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections. *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 13, 98 S.Ct. 1554, 1562, 56 L.Ed.2d 30 (1978). Notice is constructively given, however, by the publication of a statute. Persons owning property within a state are charged with knowledge of relevant statutory provisions affecting the control or disposition of that property. *Texaco, Inc. v. Short*, 454 U.S. 516, 532, 102

---

**3.** Defendants suggest several other ways in which a vehicle owner can redeem a towed car without paying towing fees. *See* part II, *supra*.

Because we find that the appearance bond procedure is adequate to protect due process rights, we need not discuss these alternative methods.

S.Ct. 781, 793, 70 L.Ed.2d 738 (1982); *Anderson National Bank v. Luckett,* 321 U.S. 233, 243, 64 S.Ct. 599, 604, 88 L.Ed. 692 (1944); *North Laramie Land Co. v. Hoffman,* 268 U.S. 276, 283, 45 S.Ct. 491, 494, 69 L.Ed. 953 (1925); *National Acceptance Co. v. Zusmann,* 379 F.2d 351 (5th Cir.), *cert. denied,* 389 U.S. 975, 88 S.Ct. 478, 19 L.Ed.2d 469 (1967). To afford notice, a legislature "need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." *Texaco,* 454 U.S. at 531–32, 102 S.Ct. at 793. Indeed, the Louisiana Civil Code specifically states: "[a]fter the promulgation, no one can allege ignorance of the law." La.Civ.Code Ann. art. 7 (West 1952).[4]

 The *Texaco* case is analogous to our own. In *Texaco,* the Indiana Legislature enacted a statute providing that a severed mineral interest that is not used for 20 years automatically lapses and reverts to the current surface owner of the property unless the mineral owner files a statement of claim in the local county recorder's office. As in the instant case, the conduct of the mineral owner is purely passive—failing to file a statement of claim. Nevertheless, the Supreme Court held that the State of Indiana was not obligated to notify the mineral owners of the new law. Publication of the statute constituted sufficient notice. Similarly, the State of Louisiana is not required to notify owners of towed cars of the availability of the appearance bond procedure. It is a state statute and car owners are deemed to have been notified of it.[5]

 D. Finally, plaintiffs argue that neither § 392 nor JPSO practices comport with procedural due process by adequately notifying owners that their cars have been towed. We hold that the notice given by the JPSO is reasonably calculated under all the circumstances to apprise interested parties that their cars have been towed. Here, the JPSO radio room dispatcher attempts to contact the owner by phone. In some cases, post cards and registered letters are sent to the registered owner to inform him of the tow. Most important, when the car owner calls to report his vehicle missing, he is informed of the tow. This notice is sufficient.

## IV.

Section 392 of the Louisiana Revised Statutes and the JPSO practices that enforce it do not deny due process to the owners of towed vehicles. Consequently, we need not reach the issues of qualified immunity, attorneys' fees, and damages. The judgment of the trial court is

REVERSED.

JERRE S. WILLIAMS, Circuit Judge, dissenting:

My disagreement with the opinion of the Court is found in one narrow but very critical aspect of the holding. That has to do with the asserted availability of an appearance bond procedure under which the owner of an impounded car can get it back without paying towing and storage charges. The Court's opinion accurately reports that there is a provision in La.Rev. Stat.Ann. 32:392(B), under which an appearance bond can be executed. I reluctantly agree that this procedure is constitu-

---

**4.** The record does contain evidence that employees of the private towing companies misrepresented the availability of the appearance bond procedure to plaintiffs. However, the district court granted summary judgment motions dismissing the towing companies from this suit, and these have not been appealed.

**5.** *Lambert v. California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), does not control the disposition of this case. In *Lambert,* the Supreme Court held that a municipal ordinance making it unlawful for any convicted person to

remain in the city for more than five days was unconstitutional in failing to provide notice of prohibited conduct. The *Lambert* court noted that the defendant's conduct was wholly passive and would not alert him to the consequences of his deed. *Id.* at 228, 78 S.Ct. at 242. *Lambert*'s application, however, has been limited to criminal cases; it only concerns "the mens rea that is necessary before the State may convict an individual of crime." *Texaco,* 454 U.S. at 537 n. 33, 102 S.Ct. at 796.

tional under the facts of this case. The procedure could be unconstitutional in a case where high charges had been built up and an owner had no way of knowing his car had been impounded. The procedure is suspect as to fundamental fairness since it provides only for a bond which is in the maximum amount of all possible penalties and charges.

The problem in this case is that under the findings of the district court, unchallenged in this Court, this appearance bond procedure had *never* been used in Jefferson Parish, that at least one judge of the First Parish Court in Jefferson Parish did not know of its existence, that no procedures with respect to handling such a bond have ever been set up. The record also makes clear that the victims of the impoundments were never informed of the alternative of an appearance bond. And once the towing and storage charges have been paid, there is no procedure of any kind under which they can be returned even if the charges are later dropped or the owner is acquitted.

The reliance of the Court is upon the established cliche that "everyone is presumed to know the law." But when judges and law enforcement officials do not know of the existence of the law or conceal the existence of it, it becomes unconstitutional for the government to act oppressively against citizens by leading them to believe that there is no such recourse under the law. And that is exactly what happened in this case.

There must come a point at which in constitutional fairness to its citizens those in charge of the enforcement of the laws have to deal fairly with citizens and not mislead them as to their rights.

This case is controlled by the principles of *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14, 98 S.Ct. 1554, 1562, 56 L.Ed.2d 30 (1978). In that case notice was given utility customers that if they did not pay their bills their service would be cut off. The Supreme Court held this notice an unconstitutional deprivation of due process of law because it did not tell the customers of their right to present objections to their bills.

It is not enough to rely upon "each citizen is presumed to know the law" when the person whose car is impounded is told that while he can later challenge the parking ticket in court he cannot have his car back unless he pays the non-refundable fees when actually there is an alternative of which the citizen is kept in ignorance. That is a violation of due process, and the *Craft* case tells us so. The customers of the utility in *Craft* were not compelled to "know the law" as to their right to challenge the utility bills. It was a violation of due process not to tell them of their right under the law. So also in this case. Hence this dissent.