**Carolyn Findley PRICE**

v.

**Don CARPENTER, Sheriff for Tarrant County, Texas, and George Campbell, Assistant Chief Deputy Sheriff for Tarrant County, Texas.**

**Civ. A. No. 4-90-639-E.**

United States District Court,
N.D. Texas,
Fort Worth Division.

Feb. 25, 1991.

Carolyn Findley Price, Arlington, Tex., pro se.

Tim Curry, Crim. Dist. Atty. of Tarrant County, Texas, Ann Diamond, Asst. Dist. Atty., Fort Worth, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

MAHON, District Judge.

Before the Court is defendants' motion to dismiss or in the alternative for summary judgment and plaintiff's response thereto. After thorough consideration of the briefs and applicable law, the Court makes the following determination.

The facts of this lawsuit are largely undisputed. The plaintiff, Carolyn Findley Price, is a practicing attorney licensed in the State of Texas. During July and August, 1990, the plaintiff executed bail bonds for approximately 25 persons incarcerated on pending criminal charges in various county jails in the State of Texas.[1] Because the plaintiff was not licensed by the County Bail Bond Board to give or execute bail bonds, plaintiff was required to execute bail bonds pursuant to an exception contained in Section 3(e) of the Bail Bond Act.[2] The Bail Bond Act provides, in the pertinent part, that:

> Section 3(a). In a county that has a board, no person may act as a bondsman except:
>
> > (1) persons licensed under this Act, and
> >
> > (2) persons licensed to practice law in this state who meet the requirements set forth in Subsection (e) of Section 3 of this Act.
>
> . . . .
>
> Section 3(e). Persons licensed to practice law in this state may execute bail bonds or act as sureties for persons they actually represent in criminal cases without being licensed under this Act, but

1. The record is not clear precisely how many of the 25 persons for whom the plaintiff executed bail bonds were detainees at the Tarrant County Jail. In any event, it is undisputed that plaintiff executed bail bonds for at least some of the individuals incarcerated at the Tarrant County Jail and that these actions formed the basis for the Sheriff's Department refusing to allow the plaintiff to execute further bail bonds pursuant to the Bail Bond Act.

2. Tarrant County, Texas, is a county with a population exceeding 110,000 and is therefore a "Bail Bond Board County" under the terms of Tex.Rev.Civ.Stat.Ann. art. 2372p–3, commonly known as the Bail Bond Act.

they are prohibited from engaging in the practices made the basis for revocation of license under this Act and if found by the sheriff to have violated any term of this Act, may not qualify thereafter under the exception provided in this subsection unless and until they come into compliance with those practices made the basis of revocation under this Act.[3]

The Tarrant County Sheriff's Department accepted such bail bonds executed by the plaintiff until on or about August 8, 1990 when the defendant discovered that the plaintiff was not the attorney-of-record for any of the persons for whom she was bonding. Further, plaintiff was not "actually representing" these individuals in their criminal cases as required by the Act. Upon learning that the plaintiff was executing bail bonds for inmates she did not represent in subsequent criminal proceedings, the defendant notified the plaintiff by letter dated August 8, 1990, that she would no longer be permitted to execute bail bonds until she complied with the Bail Bond Act. Plaintiff requested by letter dated August 13, 1990, that the decision be rescinded until the due process requirements of Tex.Rev.Civ.Stat.Ann. art. 2372 p–3, § 10 (Vernon Supp.1990) were satisfied. Because Section 10 of the Act pertains to the revocation or suspension of a bail bond *license* by the County Bail Bond Board,[4] the Tarrant County Sheriff's Department construed plaintiff's August 13, 1990 letter as a request for a post-action due process hearing before the Sheriff's designee.

By letter dated August 16, 1990, Defendant George Campbell, Assistant Chief Deputy Sheriff for Tarrant County, Texas, notified plaintiff that a public hearing had been scheduled for "*Tuesday* August 23, 1990" to hear plaintiff's complaint. It was later determined that the public hearing was erroneously scheduled on a non-existent calendar date. Defendant, upon discovering the error, notified the plaintiff of the correct date, Tuesday August 21, 1990. Further, defendant corrected within a half hour of posting the four public notices which initially showed the incorrect date.[5]

The plaintiff filed the present suit under 42 U.S.C. § 1983 on August 21, 1990, the same day upon which the post-action hearing was scheduled. In her complaint, plaintiff alleges that she was denied due process of law under the Fourteenth Amendment of the United States Constitution.[6] Specifi-

---

3. Tex.Rev.Civ.Stat.Ann. art. 2372p–3, § 3 (Vernon Supp.1990).

4. The Bail Bond Act provides in pertinent part:
 Sec. 10 (a) The board may revoke or suspend a license in accordance with the procedure provided in this section for the violation of any provision of this Act.
 (b) Notice of a hearing to suspend or revoke shall be given by certified mail addressed to the last known address of the licensee at least 10 days prior to a date set for the hearing.
 (c) The notice shall specify the charges of violation of this Act made against the licensee, and no other charges shall be made at the hearing pursuant to the notice.
 (d) The hearing shall afford to the licensee opportunity to be heard, to present witnesses in his behalf, and to question witnesses against him.
 (e) A record of the hearing shall be made. It shall be made available to the licensee on his request subject to his paying reasonable costs of transcription.
 (f) If the licensee fails to maintain the security deposit at the proper ratio required by this Act, under Subsection (g) of Section 6 of this Act, the board shall immediately suspend the license while the violation continues. No prior notice or a hearing is necessary. Once the proper ratio is regained, the suspension shall be immediately lifted. The board shall revoke the license with prior notice or hearing if the licensee fails to pay any final judgment connected with the licensee's bonding business within 30 days and there is not sufficient property held as security to satisfy the final judgment.

5. Despite the confusion concerning the date upon which the hearing would occur, the record indicates that plaintiff and all interested parties were present at the hearing on Tuesday August 21, 1990.

6. The Supreme Court has stated that a suit may be brought pursuant to 42 U.S.C. § 1983 for violations of procedural due process under the Fourteenth Amendment of the Constitution. *Zinermon v. Burch,* —— U.S. ——, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990); *see also Matthias v. Bingley,* 906 F.2d 1047, 1051 (5th Cir.1990); *Findeisen v. North East Independent School District,* 749 F.2d 234 (5th Cir.1984). However, in procedural due process claims, "the deprivation by state action of a constitutionally protected inter-

cally, plaintiff contends that Defendant Campbell failed to allow plaintiff an opportunity to be heard by way of notice and hearing prior to the August 8, 1990 revocation of plaintiff's exemption from the Bail Bond Act. Plaintiff further alleges that she was denied her request for a recision from the August 8, 1990 revocation and such denial was in conscious disregard of plaintiff's due process rights guaranteed by the constitution. Therefore, plaintiff requests that defendants be permanently enjoined from depriving plaintiff of her property without due process of law. Plaintiff further requests that she be awarded nominal and punitive damages, court costs, and reasonable attorney's fees.

The Fourteenth Amendment of the Constitution provides that no State shall "deprive any person of life, liberty, or property without due process of law." The first step in determining what protections are afforded by the due process clause is to identify a property or liberty interest entitled to due process protection. *Brock v. Roadway Express, Inc.,* 481 U.S. 252, 261, 107 S.Ct. 1740, 1747, 95 L.Ed.2d 239 (1987); *see also Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989); *Augustine v. Doe,* 740 F.2d 322, 327 (5th Cir. 1984). In making such determination, the Court, in essence, must decide whether plaintiff had a property interest sufficient to require the defendant to give adequate notice and hearing prior to her suspension.[7] *Bd. of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

Property interests can take many different forms. *Roth,* 408 U.S. at 576, 92

S.Ct. at 2708–09; *see, e.g., Barry v. Barchi,* 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979) (license for horse trainer protected); *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978) (utility service); *Dixon v. Love,* 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977) (driver's license); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (disability benefits); *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (high school education); *Connell v. Higginbotham,* 403 U.S. 207, 91 S.Ct. 1772, 29 L.Ed.2d 418 (1971) (government employment); *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (driver's license); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (welfare benefits). Property interests are not created by the constitution, but rather are created and defined by state law. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. "The hallmark of property ... is an individual entitlement grounded in state law, which cannot be removed except 'for cause.' "[8] *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S.Ct. 1148, 1154–55, 71 L.Ed.2d 265 (1982). In this case, state law has created a clear expectation that licensed attorneys may execute bail bonds provided they actually represent the individual bonded out of county jail in subsequent criminal proceedings. *Barry,* 443 U.S. at 64 n. 11, 99 S.Ct. at 2649 n. 11. This is not a mere abstract possibility for benefit, but a statutorily-created entitlement that state law has recognized and secured as a protected property interest.[9]

---

est in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without *due process of law.*" *Zinermon, supra,* 110 S.Ct. at 983 (emphasis original). Thus, procedural due process protects persons not from the deprivation of such interests, but from the mistaken or unjustified deprivation of life, liberty, or property without due process of law. *See Carey v. Piphus,* 435 U.S. 247, 259, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1978).

7. Plaintiff has alleged that the Sheriff's Department violated her due process rights as to her property interests only. Therefore, the Court

declines to consider to what extent plaintiff's liberty interests may also be implicated.

8. In essence, plaintiff's right to execute bail bonds under Section 3(e) was suspended "for cause." (i.e. violation of "actual representation" terms of Section 3(e)) and was not subject to an "at will" suspension by the Tarrant County Sheriff's Department.

9. Defendant states that plaintiff may pursue a state mandamus or injunctive action to require the Sheriff to accept her bonds. "The availability of such local law remedies is evidence of the state's recognition of a protected property inter-

*Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. As such, the Court finds that the plaintiff has asserted a legitimate "claim of entitlement ... that [she] may invoke at a hearing." *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

 "Once it is determined due process applies, the question remains what process is due." *Brock,* 481 U.S. at 261, 107 S.Ct. at 1747. It is important to note that the plaintiff does not challenge the adequacy or sufficiency of the post-action due process hearing. To the contrary, the only question raised by the plaintiff in this case is one of the timing of such hearing. The Supreme Court has consistently held that "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews v. Eldridge,* 424 U.S. at 333, 96 S.Ct. at 902, *quoting Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965); *see also Brock,* 481 U.S. at 261, 107 S.Ct. at 1747; *Breath v. Cronvich,* 729 F.2d 1006, 1010 (5th Cir.) *cert. denied* 469 U.S. 934, 105 S.Ct. 332, 83 L.Ed.2d 268 (1984). In the usual case, "some form of hearing is required before an individual is finally deprived of property interest." *Mathews v. Eldridge,* 424 U.S. at 333, 96 S.Ct. at 902, *citing Wolff v. McDonnell,* 418 U.S. 539, 557–558, 94 S.Ct. 2963, 2975–76, 41 L.Ed.2d 935 (1974). However, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *Zinermon v. Burch,* 110 S.Ct. at 984. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Hanover Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). To determine what procedural protections the constitution requires in a particular case, the Court must turn to the factors set forth in *Mathews v. Eldridge* and balance these factors in light of the facts of this case:

First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. at 334–335, 96 S.Ct. at 902–903.

The first prong of the *Eldridge* balancing test examines the private interest that will be affected by the official action. "To establish a denial of procedural due process, a party must show substantial prejudice." *Keough v. Tate County Bd. of Education,* 748 F.2d 1077, 1083 (5th Cir. 1984); *U.S. Pipe & Foundry Co. v. Webb,* 595 F.2d 264, 274 (5th Cir.1979); *Arthur Murray Studio of Washington, Inc. v. Federal Trade Comm'n,* 458 F.2d 622, 624 (5th Cir.1972). Undoubtedly, plaintiff would suffer substantial prejudice by the suspension of her right to execute bail bonds on behalf of individuals incarcerated in Tarrant County Jail. Indeed, plaintiff would not be made whole unless she sought a postdeprivation remedy for damages. Thus, the Court finds that the plaintiff has a substantial interest in continued enjoyment of this entitlement. This interest, however, must be balanced against the risk of erroneous deprivation of such interest by the procedures currently utilized by the Tarrant County Sheriff's Department, along with the relative value, if any, of additional or substitute procedures.

While the Tarrant County Sheriff's Department has not sought to set forth specific procedural steps for suspension of an attorney's right to execute bail bonds pursuant to Section 3(e), (and the state statute is silent on this issue), several informal practices and procedures can be inferred from the record. First, the Tarrant County Sheriff's Department conducts an initial in-

est." *Memphis Light, Gas & Water Division v.* *Craft,* 436 U.S. at 11, 98 S.Ct. at 1561.

vestigation into whether an attorney is properly complying with Section 3(e) of the Bail Bond Act. Once it is determined that a "reasonable possibility" exists that a violation of the Act has occurred based upon documentary evidence routinely kept in the Clerk's office, the Tarrant County Sheriff's Department notifies the attorney, by letter, of the suspension of the attorney's right to execute bail bonds pursuant to Section 3(e) of the Act and specifies the reason for such suspension. During the period of such suspension, the attorney is not prohibited from making ex parte contacts with the Tarrant County Sheriff's Department to inform the Sheriff's Department of any clerical errors in their initial finding. In addition, the attorney may request that the matter be set for a public post-action due process hearing before a neutral and detached designee of the Tarrant County Sheriff's Department wherein the attorney or counsel for such attorney may present evidence and cross-examine witnesses on the record.[10] After such hearing, the Sheriff's designee, within a reasonable amount of time, enters a final determination in the case which can be "appealed" to a state trial court by way of state mandamus or injunctive action.

After carefully reviewing the Tarrant County Sheriff's Department's procedures for suspension under Section 3(e) as set forth above, the Court finds that plaintiff's request for a presuspension hearing in this case would not substantially enhance the reliability of the Tarrant County Sheriff's Department's initial determination or minimize the risk of erroneous deprivation of plaintiff's right to execute bail bonds pursuant to the Act.[11] The principal elements for violation of Section 3(e) of the Act essentially are (1) that a licensed attorney execute a bail bond on behalf of an inmate incarcerated in the county jail and (2) that the attorney failed to actually represent that person in his subsequent criminal case. Because the statutory conditions for suspension or revocation under the Bail Bond Act are "objective facts either within the personal knowledge of an impartial government official or readily ascertainable by him," *Mackey*, 443 U.S. 1, 13, 99 S.Ct. 2612, 2618, 61 L.Ed.2d 321 (1979), the decision to suspend or revoke an attorney's right to execute bail bonds pursuant to Section 3(e) is "largely automatic" since all the relevant facts needed to determine whether suspension is appropriate are based upon records routinely maintained in the Clerk's office. *See Dixon, supra* 431 U.S. at 113, 97 S.Ct. at 1727–28. Further, as this case illustrates, rarely will there be a genuine dispute as to the relevant factors leading to the suspension.[12] *See Mackey, supra* at

---

**10.** Although a post-action due process hearing in this case was held some 13 days after the notice of suspension, "[a]t some point, delay in holding ... [such] hearing[ ] may become a constitutional violation." *Brock,* 481 U.S. at 267, 107 S.Ct. at 1750. However, because this issue is not formally raised by plaintiff's complaint, the Court declines to decide whether the delay in proceeding to the post-action due process hearing upon plaintiff's request was so excessive as to constitute a violation of due process. In any event, the Fifth Circuit has directed that a hearing must be held within a "reasonable time period" after which the suspension occurs. *Breath v. Cronvich,* 729 F.2d at 1011.

**11.** "When prompt postdeprivation review is available for correction of administrative error, [the Supreme Court] has generally required no more than that the predeprivation procedures used be designed to provide a reasonably reliable basis for concluding that the facts justifying the official action are as a responsible governmental official warrants them to be." *Mackey v. Montrym,* 443 U.S. 1, 13, 99 S.Ct. 2612, 2618, 61 L.Ed.2d 321 (1979).

**12.** At the hearing before the Sheriff's designee, plaintiff and defendant agreed to stipulate to all relevant facts. Furthermore, in the present summary judgment motion before the Court, plaintiff and defendant have stipulated that there are no genuine issues of material fact. Accordingly, the Court finds that there has never existed any real factual dispute that the plaintiff, in fact, bonded individuals out of the county jail for whom she failed to actually represent in their criminal case. To some extent, "[s]ince ... [plaintiff] does not dispute the factual basis for the [Tarrant County Sheriff's Department's] decision, [she] is really asserting the right to appear in person only to argue that the [Sheriff's Department] should show leniency and depart from [state law]." *Dixon,* 431 U.S. at 113–114, 97 S.Ct. at 1728. Because plaintiff merely seeks to have the Sheriff's Department exercise discretion in her particular case, the Court finds that additional presuspension procedures would be unlikely to have any effect whatsoever on the ultimate determination made in her case.

13, 99 S.Ct. at 2618; *Dixon v. Love,* 431 U.S. at 113, 97 S.Ct. at 1727–28; *Mathews v. Eldridge,* 424 U.S. at 343, 96 S.Ct. at 907; *Cf. Bell v. Burson,* 402 U.S. at 542, 91 S.Ct. at 1591.

Based upon the foregoing, the Court finds that the procedures followed by the Tarrant County Sheriff's Department, albeit informally constituted as a post-action due process hearing, were sufficient under the Due Process Clause to provide the plaintiff a timely opportunity to tell her side of the story to the Sheriff's designee, to obtain correction of any clerical errors, and to seek prompt resolution of any factual disputes she raised as to the accuracy of the defendant's allegations. In so doing, the Court is satisfied that the presuspension procedures chosen by the Tarrant County Sheriff's Department affords minimal risk of error and any presuspension hearing would not materially enhance the reliability of the decisional process on a Section 3(e) suspension. "[T]he risk of error is not so substantial in itself as to require [the Court] to depart from the 'ordinary principle' that 'something less than an evidentiary hearing is sufficient prior to adverse administrative action.'" *Mackey, supra* at 17, 99 S.Ct. at 2620, *quoting Dixon v. Love,* 431 U.S. at 113, 97 S.Ct. at 1727–28. *See also Mathews v. Eldridge,* 424 U.S. at 347, 96 S.Ct. at 908–909.

The third prong of the *Mathews v. Eldridge* balancing test is to identify the governmental function involved and to weigh in the balance the state's interest in the post-action hearing, as well as the administrative and fiscal burdens, if any, that would result from requiring a presuspension hearing. The state has a substantial interest in the regulation and licensing of bail bondsmen so as to guarantee the appearance of an individual at trial.[13] In that regard, courts have traditionally allowed postsuspension hearings when: "(1) the deprivation is directly necessary to secure an important government or general public interest, (2) there is a special need for prompt action, and (3) the person initiating the ... [suspension] has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance." *Breath v. Cronvich,* 729 F.2d at 1010, *citing Fuentes v. Shevin,* 407 U.S. 67, 91, 92 S.Ct. 1983, 2000, 32 L.Ed.2d 556 (1972).

. The Court finds that, under the facts of this case, the three *Fuentes* requirements for a postsuspension notice and hearing are satisfied. First, suspension of an attorney's right to proceed under Section 3(e) is essential to protect the interest of the Tarrant County Sheriff's Department in the secure and effective regulation of the execution of bail bonds for inmates at the county jail. The government's interest is also substantially served by the very existence of a summary sanction which serves as a deterrent to attorneys who attempt to circumvent the clear requirements of Section 3(e). Secondly, to guarantee that individuals are present in any subsequent criminal proceedings requires the prompt suspension of any attorney who executes an improper bail bond in violation of Section 3(e). Finally, before the attorney can be suspended, the Tarrant County Sheriff's Department must make a determination that a "reasonable possibility" exists that the statute is being violated. This requirement assures that the suspension or revocation was necessary and justified under the circumstances.

Because the risk of erroneous deprivation is minimal and the state has a substantial interest in regulating the procedures by which accused prisoners are released from jail, the Court finds that, on balance, the Tarrant County Sheriff's Department should be "entitled to impose an interim suspension, pending a prompt judicial or administrative hearing that would definitely determine" whether Section 3(e) of the

---

**13.** The Bail Bond Act provides in Section 1 that: The business of executing bonds is declared to be a business affecting the public interest. It is declared to be the policy of this state to provide reasonable regulation to the end that the right of bail be preserved and implemented by just and practical procedures governing the giving or making of bail bond and other security to guarantee appearance of the accused.

Bail Bond Act has been violated. *Barry v. Barchi*, 443 U.S. at 64, 99 S.Ct. at 2649. For the reasons set forth hereinabove, the Court ORDERS that defendants' motion for summary judgment is hereby GRANTED and further ORDERS that plaintiff's complaint be dismissed with prejudice. A judgment consistent with this opinion will be issued herewith.